## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PAULBERT TANARD KIRVIN, | ) | |
| ID # 1607717, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:12-CV-3267-B  (BH) |
| | ) | |
| WILLIAM STEPHENS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

## I.  BACKGROUND

Paulbert Tanard Kirvin (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for robbery in cause number F07-72746.  The respondent is William Stephens, Director of TDCJ-CID.

### A.    Factual and Procedural History

On September 25, 2007, the State indicted Petitioner for a robbery occurring on or about June 24, 2007, enhanced by two prior convictions.  (Clerk's Record ("C.R."):2-3).  He pleaded not guilty and was tried before a jury on June 8-11, 2009.  (C.R.:4).[1]

According to the evidence, Maurene Graham and Lacinda Lowrey were walking back to

---

[1]Petitioner was also separately indicted for a second robbery and was tried for that case at the same time as for the June 24, 2007 robbery, but the jury found him not guilty in that second case. (R. 4:17, 31).

their apartment after getting donuts at a nearby shop at about 6:30 a.m. on the morning of June 24, 2007, when a man approached them and demanded a donut.  When Graham told him "no," he demanded her purse and began pulling to grab it.  Lowrey tried to help her, but the man pushed Lowrey down, causing her to break her wrist.  He then grabbed the purse and ran.  During the confrontation, the man muttered that he had a gun. (R. 3:30-38, 73-82).  Graham called the police from a pay phone but did not speak to them until later because she had a seizure due to her diabetes and epilepsy.  Both women identified Petitioner as the robber in a photo lineup at the police station, and they later identified him again in court during trial.  (R. 3:35, 38-41, 75-76, 87-89).

Ronald Shorty testified at trial that he was acquainted with Petitioner, and that he saw him grab a purse from a "white old lady" and run back into his apartment complex.  Shorty then approached the women to help them, flagged the police down, told them that he knew the robber, and directed the police to where he had run.  (R. 3:131-35).  Petitioner's brother and his brother's ex-wife testified at trial that Petitioner was in New Mexico for a job on June 18, 2007, and that he remained there until he was extradited to Texas in December of 2008. (R. 3:148-60).

The jury found Petitioner guilty, found the two enhancement paragraphs of the indictment to be true (one was later struck), and sentenced him to twenty years imprisonment.  (R. 4:31; R. 5:8).  Petitioner's conviction was affirmed on direct appeal. *Kirvin v. State*, 394 S.W.3d 550 (Tex. App.–Dallas, 2011).  His motion for rehearing was overruled on June 24, 2011.  He did not file a petition for discretionary review.  On July 12, 2011, Petitioner mailed an application for writ of mandamus challenging his conviction to the Court of Criminal Appeals, and it denied leave to file the application on July 27, 2011.  (doc. 15-52 at 3-24); *see also Ex parte Kirvin*, WR-76,138-01 (Tex. Crim. App. July 27, 2011).  Petitioner mailed a second motion for writ of mandamus to the

Court of Criminal Appeals on July 3, 2013, seeking to compel the trial court to rule on a state habeas application that he claimed to have mailed on April 30, 2012.  (*See* doc. 15-53).  The Court of Criminal Appeals ordered a response.  *Id.*  By letter dated August 23, 2012, the Dallas County District Clerk's office advised that it had no record of a state writ filed by Petitioner.  (doc. 15-54 at 3).  On September 26, 2012, the Court of Criminal Appeals denied Petitioner leave to file the writ of mandamus.  *See Ex parte Kirvin*, WR-76,138-02 (Tex. Crim. App. Sept. 26, 2012).

On August 20, 2012, before the Court of Criminal Appeals reached a decision on his second motion for writ of mandamus, Petitioner filed his initial federal habeas petition ("Pet."), a memorandum in support ("Mem."), and a motion to stay the petition so that he could exhaust his state court remedies.  (*See* docs. 1, 4, 6).  On January 10, 2013, Petitioner's motion to stay and abate was granted, and he was instructed to file a state writ within thirty days.  (*See* doc. 19).  Petitioner mailed a state habeas application challenging his conviction on January 31, 2013, and it was denied by the Court of Criminal Appeals without written order on May 8, 2013.  (S.H.Tr.[WR-76,138-03] at cover, 20).  On May 20, 2013, Petitioner moved to reopen his federal habeas petition.  (doc. 21).  His motion was granted on May 24, 2013, and he filed an amended habeas petition on June 20, 2013 (Amend. Pet.), and a supplemental memorandum in support of his petition on August 16, 2013 (Supp. Mem.).  (docs. 21, 22, 30).

**B.**   **Substantive Claims**

Petitioner raises the following grounds for relief in his amended habeas petition:

(1) the State violated his Fourteenth Amendment rights by failing to provide him a hearing, as required by the Interstate Agreement on Detainers Act (IADA) before he was transferred from New Mexico to Texas to face the criminal charge (ground one);

(2) the State violated his right to a speedy trial by failing to try petitioner within the time limit mandated by the IADA (ground two);

3

(3) the trial court erred by:

-overruling the defense's objection to the use of an impermissibly suggestive photo lineup;

-denying petitioner use of impeachment evidence of prior convictions against the complaining witness; and

-denying a motion to dismiss the case for failure to try petitioner within the time limit mandated by the IADA (ground four);

(4)  his trial attorney rendered ineffective assistance of counsel by:

–being unfamiliar with federal law;

-agreeing to continue the case despite a mandatory IADA deadline that would have resulted in the case being dismissed with prejudice;

-failing to interview any of potential witnesses prior to trial and present exculpatory evidence;

-failing to properly investigate the background of witnesses and impeachment them with the evidence;

-opening the door to allow the prosecutor to comment on petitioner's failure to testify and failing to renew objections to the comment; and

–failing to properly convey petitioner's innocence; (ground three) and

(5) his appellate attorney rendered ineffective assistance of counsel by failing to argue certain claims better, for failing to argue that the indictment should be dismissed, and for failing to argue additional claims (ground three).

(Pet. at 7-10).  Respondent filed a response on September 19, 2013, and provided the state court

records.  Petitioner filed a reply brief on November 21, 2013.

## II.  STATUTE OF LIMITATIONS

**A.**     **Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1).  The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner's motion for rehearing was overruled on June 24, 2011.  He did not file a PDR. His conviction therefore became final at the expiration of the thirty-day period time frame for filing a PDR after his motion for rehearing was denied, July 24, 2011. *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and rejecting reliance upon the date of mandate and relying on TEX. R. APP. P. 68.2 for the thirty day period to file a PDR).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition.  Nor does he base his petition on any new constitutional right under subparagraph (C).  The one-year statute of limitations is therefore calculated from the later of (A) the date Petitioner's convictions became final or (D) the date on which he knew or should

5

have known with the exercise of due diligence the facts supporting his claims.  As to subparagraph (D), the facts supporting Petitioner's claims became known or could have become known prior to the date his state conviction became final on July 24, 2011.  Because Petitioner filed his petition more than one year after his conviction became final, a literal application of § 2244(d)(1) renders his August 20, 2012, filing untimely.[2]

**B.**     **Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection.*"  28 U.S.C. § 2244(d)(2) (emphasis added).  Because Petitioner's conviction became final on July 24, 2011, the one-year statute of limitations expired on July 24, 2012.  On July 12, 2011, Petitioner mailed a petition for writ of mandamus to the Court of Criminal Appeals challenging his conviction, and he was denied leave to file it on July 27, 2011. (doc. 15-52 at 2, 24)  This writ of mandamus may be considered a type of "other collateral review" challenging his conviction may toll the statute of limitations.  Even accounting for this tolling, the limitations period was extended by only three days, until July 27, 2012.  Petitioner did not file any state habeas application or other collateral review challenging his conviction during the one-year period.[3]  He waited until January 31, 2013, several months after the limitations period had run.  It is well settled that a document filed in state court after the limitations has expired does not operate to statutorily toll the limitations period.  *See Scott v. Johnson*, 227 F.3d

---

[2] Petitioner lists that date as the date he placed the petition in the prison mailing system. (Pet. at 10).  That is the date his federal petition was filed.  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

[3] Petitioner's second writ of mandamus did not challenge his conviction, but instead sought to have the state habeas court act on a habeas application it had not received.

260, 263 (5th Cir. 2000).  Therefore, the statutory tolling provision does not save the his federal petition.

Nevertheless, the AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled.  *Holland v. Florida*, 130 S.Ct. 2549 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling).  "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable."  *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)).  It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights."  *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing.  *Holland*, 130 S.Ct. at 2562, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  He bears the burden to show entitlement to equitable tolling.  *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam).  Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling.  *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).  The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

In his reply brief, Petitioner contends that he is entitled to equitable tolling because (1) he mailed a state habeas application on April 30, 2012; (2) it was not received and filed through no fault of his own; and (3) he attempted to contact the trial court about his application several times, but that court never responded to his inquiries until he filed a writ of mandamus with the Court of Criminal Appeals. (Reply at 4-5). The record does reflect the trial court's receipt on June 21, 2012, of Petitioner's letter inquiring about the status of his state habeas application because it had been over thirty-five days since he mailed it. His letter asserts that he had mailed an earlier letter on May 30, 2012, that is not included in the trial court record. The record does not reflect any response to Petitioner's letters. (*See* www.dallascounty.org, search for Cause No. F07-72746).

According to Petitioner, he waited until April 30, 2012 (nine months after his conviction was final), to mail a state writ challenging his conviction. He offers no explanation for this delay. The record does support his claim that he attempted to contact the trial court promptly after he received no information about the writ, but the trial court did not respond. He then promptly filed a motion for writ of mandamus with the Court of Criminal Appeals in an attempt to have the trial court rule on his state habeas application. It was only after he filed his initial petition in this Court that he was made aware that the trial court never received or never filed his state writ.

The Fifth Circuit has held that long delays in a petitioner's receipt of notice of state court action may warrant equitable tolling. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir.2009). In *Hardy*, the Fifth Circuit found that a petitioner who waited eleven months after filing his state writ to inquire about its status was diligent in pursuing relief and entitled to equitable tolling, where he contacted the state court twice after he did not receive a response to his first inquiry within two months, and he filed his federal petition within seven days of the notice that his writ had been

denied.  *Id*. at 599.  In contrast, it found that a petitioner who waited ten months after filing a state writ before inquiring about its status, waited another eighteen months before making a second inquiry, and filed his federal petition within forty-eight days of receiving notice that the writ had been dismissed, was not entitled to equitable tolling.  *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir.2010).  In *Stroman*, the Fifth Circuit noted that the petitioner in *Hardy* had filed his state writ within three months of his conviction becoming final and had made his second inquiry within two months of his failure to receive a response to his first inquiry regarding his state writ, whereas the petitioner in *Stroman* had waited seven months after his conviction became final to file his state writ and waited eighteen months before making a second inquiry about its status.  *Id*.

Here, Petitioner waited longer than the *Stroman* petitioner to attempt to file his state writ. As in *Hardy*, he was diligent in contacting the state court after he mailed his state writ and in filing a writ of mandamus when he received no response.  Had the trial court responded to Petitioner's inquiries, he would have had notice that his state writ had not been received, and he would have been able to mail another one or file his federal protective petition earlier.  For these reasons, this facts in this case are closer to those in *Hardy* than *Stroman*, and Petitioner is therefore entitled to equitable tolling.  His federal petition should be considered timely filed.

### III.  AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determin-

ation of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of Petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## IV. IADA

In his first ground for relief, Petitioner asserts that his due process rights under the Fourteenth Amendment were violated because he was not provided a hearing before he was extradited from New Mexico to Texas to face a criminal charge, as is required under the IADA. (Supp. Mem. at 10-14).  In his second ground for relief, Petitioner asserts that his right to a speedy trial under both Article III and Article IV of the IADA were violated.  (Supp. Mem. at 15-22).

The IADA is a contract between the United States and the states, including Texas, that have adopted it.  Its purpose is "to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction."  *Birdwell v. Skeen*, 983 F.2d 1332, 1335 (5th Cir. 1993).  However, the IADA is a federal law subject to federal construction. *New York v. Hill*, 528 U.S. 110, 111 (2000).  Under Texas' codification of the IADA, when a detainer has been lodged against a prisoner in another state, either the prisoner or the receiving prosecutor may initiate his transfer.  TEX. CODE CRIM. PROC. ANN. Art. 51.14, (III), (IV) (West 1975).  The Supreme Court has held that where the prosecutor in the receiving state seeks a prisoner's involuntary transfer under Article IV of the IADA, and the incarcerating state has adopted

the Uniform Criminal Extradition Act (UCEA), the prisoner has the right to a pre-transfer hearing. However, when a prisoner initiates his transfer under Article III, he waives his pre-transfer rights in the sending state under the UCEA. *Cuyler v. Adams*, 449 U.S. 433, 443-50 (1981).

Under Article III, where a prisoner initiates his own transfer, he shall be tried within 180 days after the prosecutor of the receiving state is informed that the prisoner has requested the speedy disposition of the charge.  Art. 51.14 (III)(a); *see also Birdwell v. Skeen*, 983 F.2d 1332, 1336-37 (5th Cir. 1993).  Under Article IV, when the receiving state initiates the transfer, the prisoner shall be tried within 120 days after the receiving state takes custody of him.  Art. 51.14(IV)(b).  Under both Article III and IV, these deadlines are extended where: 1) a court with competent jurisdiction; 2) grants a continuance in open court; 3) the length of which is reasonable or necessary; 4) with the defendant or his attorney present; 5) upon a showing of good cause.  Art. 51.14(III)(a), (IV)(c); *see also Birdwell*, 983 F.2d at 1336.

A claim that the IADA has been violated is cognizable in a § 2254, but an alleged violation dictates federal habeas relief only where a petitioner demonstrates that the alleged violation is a "fundamental defect" of a type that would lead to a "miscarriage of justice."  *Lara v. Johnson*, 141 F.3d 239, 242-43 (5th Cir. 1998), *quoting Reed v. Farley*, 512 U.S. 339, 348 (1994).  A habeas court should consider whether an alleged violation affected or damaged a petitioner's ability to get a fair trial and whether it created the possibility that an innocent man was convicted and imprisoned. *Lara*, 141 F.3d at 243.  Furthermore, habeas relief is not warranted where a violation is caused by negligence on the part of the sending state.  *Id*.

A.    **Applicable Facts**

As noted, Petitioner was indicted on September 25, 2007.  While serving a sentence in New

Mexico, Petitioner mailed a motion to dismiss to the Texas trial court on September 30, 2008, alleging that the State of Texas had failed to try him within 180 days of the date he provided notice under the IADA of his desire to stand trial.  *Kirvin*, 394 S.W.3d at 553.  Petitioner arrived in Dallas County, Texas, on December 4, 2008.  *Id.*  At a pretrial hearing concerning the motion to dismiss on February 12, 2009, the defense introduced documents reflecting that while he was incarcerated in New Mexico in February of 2008, Petitioner received notice of the Texas indictment against him. He signed a document indicating that he was requesting final disposition of the indictment, and that he understood that this request would be considered a waiver of extradition.  This same document advised that he could oppose the request for transfer to Texas and therefore preserve the procedural protections provided by extradition laws.  (Supp. R.:Def. Ex. 2).  In addition, Petitioner sent a letter to the Deputy Warden of the New Mexico facility in which he was incarcerated advising her that he "would like to have this Detainer resolved by means of the Inter-State Agreement on Detainers Act." (Supp. R.:Def. Ex. 1).   Finally, the defense introduced a fax transmittal sheet from a prison in New Mexico to a Dallas County prosecutor, dated September 24, 2008, stating that "Here is the IAD that was filed back in Feb.  Thank you." (Supp. R.: Def. Ex. 1).

The State argued that this evidence was insufficient to establish that the Dallas County prosecutors were told about Petitioner's request for a final disposition.   Defense counsel acknowledged that the documents did not establish this fact, and that further investigation with New Mexico officials was needed.  The trial court denied the motion to dismiss the indictment based on an alleged failure to try Petitioner within 180 days because the documents submitted by the defense did not reflect that a detainer was properly placed, as there was no signature from the warden, and there was no proof of proper certified mail service on the trial court and the prosecution.  (Supp.

13

R.:8-12).

On June 8, 2009, prior to jury selection, the defense filed a second motion to dismiss based on an alleged IADA Article IV speedy trial violation because Petitioner had not been tried within 120 days of his arrival in Texas on December 4, 2008. The trial court denied the motion to dismiss on the basis that defense counsel had sought, and been granted, motions to continue the pretrial hearing on the first motion to dismiss. (R. 2:8-10). On direct appeal, the state appellate court affirmed this ruling on the basis stated by the trial court, and because during the 120-day period, defense counsel agreed to a trial date of June 8, 2009, a little over a month after the 120 days had lapsed. *Kirvin*, 394 S.W.3d at 556-557.

## B.    <u>Pre-transfer Hearing</u>

In his first ground for relief, Petitioner claims that the State of Texas violated his right to a pre-transfer hearing when it invoked Article IV of the IADA and placed a detainer on him while he was in custody in New Mexico without providing him a hearing.[4] As the Supreme Court made clear in *Cuyler*, however, the sending state has the responsibility to provide a pre-transfer hearing to a prisoner under detainer of another state, not the receiving state. To the extent that New Mexico failed to provide Petitioner a pre-transfer hearing, this is not a basis for habeas relief. *Lara*, 141 F.3d at 243. There is also no evidence in the record that Petitioner requested a hearing. The defense's evidence at the pretrial hearing concerning the motion to dismiss reflects that Petitioner waived his right to contest his transfer. The state habeas court denied this claim on its merits, the denial of this claim was not contrary to federal law, and this ground for relief should be denied.

---

[4] While the record is not quite clear on this point, it appears that Petitioner's motion to dismiss and the fax from the New Mexico prison in late September and early October of 2008, prompted the trial court to appoint counsel for Petitioner on October 6, 2008, and prompted prosecutors to seek to have Petitioner transferred from New Mexico to stand trial in Texas. (C.R.:7-8, 16-17).

D.    **Speed Trial**

In his second ground for relief, Petitioner asserts that the State of Texas violated his right to a speedy trial under either Article III or Article IV of the IADA because he was not tried within 180 days of the date he advised New Mexico prison officials that he wanted a final disposition of the Texas charge against him, and because he was not tried within 120 days after his arrival in Dallas on December 4, 2008.

Article III of the IDEA makes clear that the 180-day period begins when  a prisoner "shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint."  The request "shall be accompanied by a certificate of the appropriate official having custody of the prisoner" and the request "shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." TEX. CODE. CRIM. PROC. ANN. Art. 51.14 (III)(a), (b).

The evidence at the pretrial hearing on Petitioner's motion to dismiss failed to demonstrate that Petitioner's notice was forwarded to the trial court and the prosecutors, as required by the IADA. (Supp. R.:11).  Dismissal under the IADA is not warranted because there was no violation of the speedy trial requirement set forth in Article III.  *Lara*, 141 F.3d at 239 (holding that dismissal under Article III was not warranted where there was no proper request forwarded to the receiving state authorities).

Petitioner also claims that his right to a speedy trial under Article IV was violated because

he was not tried within 120 days after he arrived in Dallas County.  The state habeas court denied this claim on its merits, and the state appellate court addressed it in detail on direct appeal.  The Supreme Court has held that where defense counsel has agreed to a trial date outside the IADA's time period, the defense is barred from seeking dismissal on grounds that the trial did not occur within the IADA time period.  *New York v. Hill*, 528 U.S. 110, 112-16 (2000).  Noting the *Hill* opinion, the state appellate court held that Petitioner was precluded from seeking dismissal of the indictment against him because counsel had agreed to continue the case from October 7, 2008 until December 8, 2008, and before the 120 days had lapsed, had agreed to a June 8, 2009 trial date.  *Kirvin*, 394 S.W.3d at 556-57.  As an alternate basis for denial of this claim, the state appellate court further held that defense counsel had sought and obtained several agreed continuances of the pretrial hearing, and that this also tolled the 120-day statutory period.  *Id*.  The state court's denial of this ground was neither an unreasonable application of federal law or contrary to federal law.  This ground should be denied.

## V.  TRIAL ERROR

Petitioner alleges that the trial court erred by ruling that the photo lineups were not impermissibly suggestive, denying Petitioner use of impeachment evidence of prior convictions against the complaining witness, and denying a motion to dismiss the case for failure to try him within the IADA time limits (ground four) (Amend. Pet. at 7; Supp. Mem. at 37-40).

A.    <u>**Photo Lineups**</u>

The defense moved to suppress the photo identifications of Petitioner by Graham and Lowery on the basis that the photo lineups were impermissibly suggestive.  The trial court conducted a hearing on this motion, during which the detective who conducted the lineups testified.  He

16

testified that: 1) he collected photographs of people similar in appearance to Petitioner; 2) he conducted each lineup with the two witnesses separately; 3) he informed each witness that the suspect may or may not be in the lineup; 4) he placed the photos in a stack for the witness to review; 5) he placed a hard card behind the pictures; 6) the photographs were kept flat on the table and the witnesses did not look at the back of any of the photographs; and 7) Petitioner's location in the stack was different for the two lineups. (R. 3:8-20). Defense counsel argued that because Petitioner's photo had signatures on the back of it, there was a possibility that the witnesses saw that he had been identified by other people. The trial court denied the motion to suppress. (R. 3:23). On direct appeal, the state court of appeals held that the trial court did not err in denying the motion to dismiss; the lineups were not impermissibly suggestive where there was no evidence that the witnesses looked at the back of the photographs while viewing the photos or that they saw any name on the back of Petitioner's photo. *Kirvin*, 394 S.W.3d at 562-63. This claim was then denied on its merits at the state habeas level. This denial is not contrary to federal law.

Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice.  While he asserts that there is a possibility that one of the witnesses saw other names written on his photo (Supp. Mem. at 40), there is no evidence that this actually occurred.  There is no evidence that this alleged trial error had a substantial effect or influence on the verdict, and this ground is without merit.

**B.**      **Impeachment Evidence**

Petitioner next asserts that the trial court erred because it did not permit defense counsel to question the complaining witness, Graham, about her prior convictions because the convictions were too old.  (Supp. Mem. at 38).

The trial record reflects that a hearing was held outside the presence of the jury during which Graham acknowledged that she had been convicted in Texas and Arizona for fraud and theft, but she was unable to give specifics because the offenses were "all run together."  Defense counsel questioned her about a possible 1997 conviction for which she received probation, but she testified that she was never placed on probation, and that she was released from prison in December of 1998. (R. 3:42-47, 53-56).  The trial court ruled that her convictions were not admissible because there was no proof that any sentence had been served in the last ten years. (R. 3:57).  The state appellate court addressed this claim on appeal.   After noting that Texas law provides that convictions or confinements over ten years cannot be used to impeach a witness unless specific facts and circumstances establish that the probative value substantially outweighs the prejudicial effect, the court held that no such facts and circumstances had been demonstrated and denied this claim.

*Kirvin*, 394 S.W.3d at 563-64; *see also* TEX. R. EVID. 609(b).  The state habeas court subsequently denied this claim.  This denial is not contrary to federal law.

A federal habeas court does not review a state court's interpretation of its own law.  *Charles v. Thaler*, 629 F.3d at 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d at 395.  Instead, Petitioner must establish that any error is not harmless.  Petitioner has not made this showing because he has not demonstrated that any alleged error had a substantial effect on the verdict.  In addition to Graham, Petitioner was identified as the robber by two other witnesses.  Even if the trial court erred in ruling that Graham could not be impeached by her prior convictions, this did not have a substantial effect on the guilty verdict.  This claim is without merit.

## C.   **Motion to Dismiss**

Finally, Petitioner contends that the trial court erred in failing to grant the defense's motions to dismiss for failing to try him within the time limits set forth in the IADA.  As discussed earlier, there is no federal constitutional error in denying these motions to dismiss.  Therefore, the state court's denial of this claim was not contrary to federal law.  Petitioner's fourth ground for relief is without merit and should be denied.

## VI.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third ground for relief, Petitioner asserts that his trial attorney was ineffective for being unfamiliar with federal law, agreeing to continue the case despite a mandatory IADA deadline that would have resulted in the case being dismissed with prejudice, failing to interview any of the potential witnesses prior to trial and to present exculpatory evidence, failing to properly investigate the background of witnesses and impeach them with the evidence, opening the door during closing arguments to a comment on Petitioner's failure to testify and failing to renew objections to the

comment, and failing to properly convey Petitioner's innocence during closing statements. (Supp. Mem. at 23-34).  These claims were denied on their merits by the state habeas court.  This denial is not contrary to federal law.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality

20

of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.** **Knowledge of Federal Law**

Petitioner asserts that the attorney who was appointed to represent him in the hearing on his motion to dismiss, Bruce Anton, displayed a lack of knowledge about the IADA. (Supp. Mem. at 23-24). The record does not support this assertion. Anton acknowledged at the hearing that the documents he had obtained from New Mexico did not demonstrate that Texas prosecutors had been provided notice that Petitioner requested transfer to Texas, and he sought a continuance of the hearing for additional time to obtain testimony from New Mexico officials. This is not evidence that he was unfamiliar with the IADA. To the contrary, the record of the hearing reflects that Anton was very aware of the requirements of the IADA but did not have sufficient evidence to support the motion to dismiss. This claim is without merit.

**B.** **Continuance**

Petitioner next asserts that his trial counsel, Ted Shoemaker, was ineffective for agreeing to continue his case, which resulted in an inability to have the indictment dismissed under the IADA. (Supp. Mem. at 24, 27, 29). Petitioner has not shown deficiency or prejudice in this respect. First, he appears to assume that the State would not have tried him within the 120-day time limit if his counsel had not agreed to a continuance. At the pretrial hearing on the defense motion to dismiss, held on February 12, 2009, the prosecutor stated that the State was ready to try Petitioner on the robbery charge and for the case to be set for trial. (Supp. R.:10). The record does not reflect that it was the prosecution, rather than the defense, that benefitted from the continuances. A federal habeas court must presume that counsel acts reasonably, so it is presumed that counsel agreed to continue

the case because it benefitted Petitioner.  Furthermore, even if the State was not prepared to try Petitioner within the IADA time frame, that deadline may be extended where a continuance is granted for good cause.  The State could have argued the merits of the continuance to the trial court, even if the defense had not agreed to a continuance.  This claim is without merit.

**C.**     **Failure to Investigate and Present Evidence**

Petitioner next asserts that trial counsel was ineffective for failing to investigate and offer impeachment evidence against the complaining witness regarding her prior convictions and racial epithets and against Ronald Shorty regarding his bipolar disorder.  He also asserts that counsel should have sought to have Shorty's testimony excluded because he was incompetent to testify. (Supp Mem. at 24-25).  Finally, he asserts that counsel failed to interview any witnesses prior to trial that "would or could have" been called at trial. (Supp Mem. 23).

**1.**     **Impeachment Evidence**

With regard to impeachment evidence, Petitioner has failed to demonstrate any deficiency or prejudice.  The impeachment evidence against Graham was ruled inadmissible because her convictions were too old.  When he was denied the ability to use her previous convictions to impeach Graham, defense counsel sought a continuance to obtain further evidence, and it was denied by the trial court. (R. 3:57).  Petitioner has not demonstrated that counsel was ineffective in this regard, and he has not shown that there were any recent convictions that could have been used against Graham. As to possible racial epithets, Graham testified that she called Petitioner a "black son of a bitch" when he ran away with her purse because she was in pain and she was angry. (R. 3:38).  Petitioner has not shown that counsel was ineffective for failing to offer further unspecified evidence.  With regard to Ronald Shorty, he testified at trial that he was currently in jail charged

with a sexual assault. (R. 3:137).  He acknowledged on cross-examination that he is mentally retarded and has bipolar disorder, and that he takes medication every day. (R. 3:139).  He also acknowledged using cocaine in the past. (R. 3:139-40).  Petitioner has not alleged any further impeachment evidence that could have been offered against Shorty, and he has failed to allege any support for his statement that Shorty was not competent to testify due to his mental health.  This claim is without merit.

### 2.      **Exculpatory Evidence**

Petitioner asserts in a conclusory manner that his attorney was ineffective for failing to interview and call potential witnesses.  The Fifth Circuit has held that complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Defense counsel called both Petitioner's brother and his brother's ex-wife as witnesses. Petitioner has failed to name any other potential witness who was not called but was available and willing to testify, and would have given testimony that benefitted Petitioner.  This claim is without merit.

### D.      **Closing Argument**

Finally, Petitioner asserts that his attorney was ineffective for stating during closing

argument at the punishment phase of the trial that "I do want to reiterate this empathy that we have for these two women because what happened to them shouldn't have happened to them." (R. 4:45). Petitioner asserts that this statement constituted ineffective assistance of counsel because it opened the door to a later comment by the prosecutor on Petitioner's failure to testify, and it failed to properly convey his innocence of the crime.  He also asserts that counsel did not properly object to statements made by the prosecution in response.

Defense counsel later objected to the prosecutor's comments during closing that Petitioner wanted the jury to believe that he had sympathy for the victims, but that he had never taken responsibility for his actions.  The trial court sustained the objection that the prosecutor was striking at the defendant through his attorney and overruled a second objection that the prosecutor's statement was a comment on Petitioner's decision not to testify. (R. 4:45-46).  The state appellate court ruled on direct appeal that the prosecutor's argument was an appropriate jury argument because it was in response to defense counsel's efforts to minimize his criminal record and to commiserate with the victims.  *Kirvin*, 394 S.W.3d at 560-61.  Petitioner now asserts that his attorney was ineffective for "opening the door" to a comment on his failure to testify, for failing to object further to the prosecutor's comments, and for failing to "convey" his innocence.

Petitioner has failed to demonstrate prejudice because he has failed to show a reasonable probability that the outcome would have been different if his attorney had not made this argument or if he had made additional objections.  It is clear from the record that defense counsel, in asking that Petitioner receive a five-year sentence, was arguing that Petitioner's criminal record occurred when he was much younger, and that the circumstances surrounding his prior circumstances were not serious as they might appear on the surface. (R. 4:42-44).  At the same time, counsel was stating

sympathy for the two complaining witnesses in this case.  In response, the prosecutor asked that the

jury start with a sixty-year sentence for Petitioner, given his criminal history and the circumstances

of his crime. (R. 4:49).  Although the jury could have sentenced Petitioner anywhere from five years

to life, it imposed a twenty-year sentence that was much closer to the minimum sentence than to the

maximum one.  Petitioner has not demonstrated that counsel's strategy during closing statements

was ineffective.  Furthermore, to the extent that he did not properly convey Petitioner's innocence

during argument at the punishment phase, the jury had already determined Petitioner's guilt.

Counsel was not ineffective for failing to emphasize his innocence after the jury had found him

guilty.  Petitioner's ineffective assistance of trial counsel claims are without merit and should be

denied.

## VII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his third ground for relief, Petitioner also asserts that appellate counsel was ineffective for

failing to argue certain claims better with more thorough briefing and better support from the record,

for failing to argue that the indictment should be dismissed, and for failing to argue other claims that

Petitioner wished to have argued. (Supp. Mem. at 34-36).

The federal constitution guarantees a criminal defendant the effective assistance of counsel

on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been

ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466

U.S. 668 (1984).  Under *Strickland*, Petitioner must show a reasonable probability that but for his

counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274

F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every

non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

"Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of

reasonableness.'"  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*,

466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or

make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments

based on directly controlling precedent should be discovered and brought to the court's attention."

*Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).   To determine whether appellate

counsel was deficient, courts must consider whether the challenge "would have been sufficiently

meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

The state appellate court's published opinion addresses all claims raised by appellate counsel

in detail and reflects a detailed examination of the record.  Petitioner has not shown a reasonable

probability that had counsel argued any point of error differently, there is a reasonable probability

that the outcome would have been different.  The appellate court addressed Petitioner's motions to

dismiss the indictment in detail and determined that the denial of these motions was not error.

Furthermore, most of the claims raised on direct appeal were addressed on their merits by the state

habeas court and have now been determined to be without merit on federal review.   Finally,

Petitioner has failed demonstrate that there was any meritorious claim that was not raised on direct

appeal.  The denial of this claim by the state habeas court is not contrary to federal law, and this

ground for relief should be denied.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected

in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 10th day of April, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE